Our next case is United States vs Haisten. You may proceed. Good morning, Your Honors. May it please the Court, Peter Ederle for appellants Judy and David Haisten. The, uh... Do you want any time for rebuttal? Thank you, Your Honor. Three minutes, please. Done. Your Honor, this case comes before the Court today in a slightly different procedural posture than when the Certificate of Appeal was first granted. This is a 2255 case. The Certificate of Appeal was quite specific, I should say, to granting in part of the Certificate of Appeal. And it stated, the question was, was it necessary for the prosecution to present evidence that any of the DVDs seized in Cincinnati, Count 14, or any of the DVDs seized in South Carolina, Count 15, ever traveled to the Eastern District of Pennsylvania? And if so, whether the prosecution presented such evidence. Since that time, both parties briefed the issues, and the government, in its appellee brief, answered the question with one word. Or two words, I should say. Yes, it was necessary. And no, we did not. Right. So, we understand the background here, what we're arguing about. What I take it we're here arguing on is whether, in spite of the government's concession, that A, the Counts 14 and 15 convictions are infirm because there was no venue, and B, that a properly instructed jury would have acquitted, and therefore the outcome would have been different. That, in spite of those things, your client can't meet the Strickland standard. So, why don't you, and they say that as to both problems, that there's not deficient performance because there could have been some strategic reason for not opposing these counts, even though venue was not properly founded in the Eastern District, and that there's no prejudice because your clients would have ended up with the same sentences. So, go with those points. I'll address both of those, Your Honor. On the first point, once the case is in a posture where the case has gone in, at least the government's case has gone in, the government's rested, at that point there just can be no strategic or tactical or whatever reasonable basis to not raise the issue of the venue on the DVDs. Admittedly, in this case, it took a lot of review by a lot of lawyers, by a trial judge, by a panel of this court, and ultimately by counsel here today to get to the point where it's like, wait a minute, this evidence never came in. There's no venue, period, by any standard. Is there a strategic, is it possible, there's no evidentiary hearing here, so we don't know, but is it theoretically possible that the defense counsel here could have thought, look, I'm better off letting them roll the dice here than exposing them to a second trial down in South Carolina? That is a perfectly logical frame of mind for counsel. That's true. If that's perfectly logical and a strategic reason, is the proper remedy here to vacate and remand so that the district court can hold an evidentiary hearing to see whether that's what was in counsel's mind, or is your pitch that there's no way this could stand up? There's no way that this could stand up at the moment when counsel are moving for a judgment of acquittal. The government's rested. Counsel make their pitch for all the counts, all the charges, and at no point do they say, and you know what, with regard to some of these counts, there's a specific venue issue as opposed to the broader sufficiency of the evidence, arguments one would make at arguing the JOA. Because at that point it would be double jeopardy to charge them in South Carolina if you didn't. Exactly. And that, Your Honor, that's why I don't believe that a retrial of the DVDs, which frankly is almost, that's not what this case was about. I mean, it was. I'm going to take that back. But I believe given where the case was procedurally and what did not happen at that time, there are double jeopardy, there is a double jeopardy issue. And my clients, and well, I'll leave it at that. That is the relief that's sought to simply strike, to vacate and strike the convictions and judgments of sentence on counts 14 and 15 with prejudice to, at this point, a retrial given that all that evidence already came in. You've got to meet both deficient performance and prejudice under Strickland. What's the argument for prejudice here since with or without counts 14 and 15, the sentencing guideline bump was going to be exactly the same and the exposure was exactly the same? Thank you for bringing me back to that second question, that second issue that Your Honor raised. Your Honor, there's, these are two felony counts. The rest of the case is misdemeanors. So there's, I'm not going to argue to the court that the sentence would be radically different or even substantially different. But that's not the sole basis of prejudice. If we look, prejudice is not just the sentence. Prejudice is the conviction itself. And I'd just like to point out that what, I believe the government's going to, last night counsel was kind enough to e-mail me a couple of cases that he may bring to the court's attention. Today, since I did the bare minimum, I read them. And one of them, Weaver, discusses how on 2255, on these habeas post-conviction proceedings, there's a high burden for the petitioner. And it talks about an ineffective assistance claim can function as a way to escape rules of waiver and forfeiture that undermine finality understood. Right. So Weaver versus Massachusetts, do you understand it to say that even if there's structural error, there can be a responsibility to show prejudice? Absolutely. And I agree. I will concede the point that although there can be, there may be, it depends on the structural error. Well, but their point, I'm taking it is, we'll let the government speak for itself. But I take it their point is the relatively narrow category of structural errors where prejudice is presumed is not, does not include venue error. So this is okay, fine. So in light of Arnheimer's statements, maybe this is structural error. But you still have to show prejudice, Mr. and Mrs. Haste. And what's your prejudice? What's your answer? So my answer to that would be, and I would go directly to the case cited by the government, this is the Weaver case, and where they say they define prejudice. And they say has not shown prejudice in the ordinary sense, i.e., a reasonable probability that the jury would have not convicted him. Well, we don't have a reasonable probability here. That's what happened. So your assertion is, if I understand it correctly, that you don't presume prejudice, but in a case like this, definitionally there's prejudice because there is a conviction. And there could not have been one without it. It's not a question of, well, this is extra evidence, extra weight, extra argument, extra anything. This is, the government is conceding there was never venue here. This is an improper conviction now. And no matter what relief this court grants or doesn't grant, it will always be an improper conviction. And that distinguishes it from every case that either side cites in their briefs or that may be brought up today to your honors for the first time. There's just no, there was no reasonable probability of conviction. There was a conviction, and there was no way to get a conviction without this error. And it's conceded. It's agreed upon. And that's why these particular charges, 14 and 15, they, again, they need to be vacated, stricken, the judgments and the sentences stricken, prejudiced to any retrial of those particular, of those specific counts. I would just point out, because, again, it is prejudice, because prejudice is a reasonable probability that there would be a conviction. Well, we have that and beyond, and not just that, again, but for there would not have been a conviction. And everyone agrees. Is there a standard view? You, in your opening brief, say that this venue error is, if I read it right, is 52B plain error, which surprised me a little bit because, I mean, do you really want us to review for plain error here? That would seem to be less, a less than happy outcome for your client. And, once again, that, the short answer to that question is no. So what are we reviewing for? What you're reviewing for your honors is there is a conviction before the court which the government concedes is an improper conviction. And that, and again, that's a slight change in the analysis from where we were on day one, but it's where we are today. And the question is, what is this court going to do with a conviction before it where everyone agrees it's an improper conviction? And with regard to the court's second question, which is, what's the prejudice? And I don't believe I'm going outside the record here when I say this. The Hastins, they're not involved in this DVD business anymore, and that's in the sentencing memo from pre-trial, from probation. And they're not involved in this PET stuff anymore. But they are still eBay, Amazon sellers. This is what they do. And this issue of counterfeit trademarks, trademark counterfeiting, could, at some point, come up in the future. And if and when it does, these convictions will bite them out of nowhere. Are we reviewing, do we have plenary review over the legal decision about venue here? A plenary review? Do we have plenary review? I'm asking. Yes. I'm just back on my, okay, thanks. Judge Phipps? So, yeah, let me just chime in on the consequences of your approach to prejudice. So, as I understand it, venue is waivable. So, if trial counsel at the outset said we're just going to waive it, we're fine here, right? Then no evidence goes in during the case, the government's case in chief, but it's been waived. And then that leads to convictions under counts 14 and 15. Later on, wouldn't you be able to say, hey, we automatically made prejudice because that decision to waive led to the convictions under 14 and 15 until it would collapse the entire ineffective assistance of counsel analysis to just the performance. So, I guess my question is, is your vision of prejudice such that it collapses all waivers of venue to just the performance prong issue? I don't believe so, no. There's always a burden by a preponderance of the evidence for the government. And there's no, certainly no on the record waiver of any of these issues. And I'm not aware of anything for a stipulation person, let's say. Yeah, suppose waiver, suppose stipulation, suppose that counsel does it, right? They do it early on, not after the case in chief, but early, early, early on. So, the government doesn't put on the evidence now based on a stipulation for a waiver. Now, if it later turns out that, oh, that was a mistake, you aren't then saying that that would be prejudice automatically in that case, are you? Not automatically, no. But there's a somewhat sui generis element to this case. There, this is not, this is a situation where after the fact, everyone concedes the venue is not there. And no one has presented anything from the record or a written stipulation or anything, or anyone has waived any particular issue. And this is a constitutional right. And I appreciate the court's indulgence with regard to perhaps an advocacy elevating that right to life, liberty, and property. It's not, but it is in the Declaration of Independence. And in this particular case, these folks, you know, these folks are in South Carolina, not Pennsylvania, not the Eastern District. Any questions? Okay. Thanks, Attorney Lee. We'll have you back for your rebuttal. Thank you. Mr. Salzman. Good morning, Your Honor. May it please the Court. Robert Salzman on behalf of the government. Our principal position here is that there is no prejudice as a result of the alleged ineffective assistance by counsel. I can talk about the performance problem as well. I think there's very good reasons. Yeah. Let's jump onto prejudice immediately. How can it not be prejudicial to have a felony conviction that is unlawful? There is square precedent in this court for recognizing that even a felony conviction will stand on 2255 and not be addressed, even if it's erroneous, if the sentence would not be different. That, of course, is the concurrent sentence doctrine. So it's clear that prejudice means more than you could simply lose a count or two. Prejudice refers to the outcome of the case. The outcome of the case here will include collateral consequences, will it not? Doesn't bearing a felony conviction all by itself have consequences? It does, Your Honor, and there are other felony convictions in this case. It's incorrect to state that the only felony counts were 14 and 15. Count one, the conspiracy is a felony offense. A couple of the pesticide counts are felony counts as well. So even if that's true, what law do you have for the proposition that what's a couple more felony convictions between friends? We lay a couple more on you and don't worry about it because you're a felon already. Does this mean the Palumbo case that you rely on yourself talks at some length about collateral consequences and what it could mean for a person down the road, downstream consequences of bearing felony convictions that are frankly unlawful? I'll refer again, Your Honor, to the concurrent sentence doctrine. I don't want to be colloquial about it and say that it's extra felony convictions among friends, but that's what happens in those cases, that this court does not reach counts where it does not have to, where there would not be a difference in the overall outcome of the case. I'm aware of that happening in a life sentence circumstance. Can you point us to any case where we just said, you know, concurrent sentence? Don't worry about it. And we didn't ask questions about collateral consequences. I believe there are many, but what I could tell you right off the bat where it's happening most frequently right now is in the Rahaif context. That's a Supreme Court case. Those are plain error cases where those plain error cases, those things are getting kicked right and left on 52B, not on this question of no harm, no foul. Well, sir, there are many 2055 claims based on Rahaif, and there are many that have been resolved based on the concurrent sentence doctrine. Not by this court in a precedential decision yet, but by other courts and by numerous district courts, because those courts are squarely applying the precedent of this court. So it's not a life sentence. You have a felon in possession conviction, but it's very often the case that the five ten-year sentence on that count is concurrent to other counts, and the court lets it go, that that is the nature of it. And that is the concept that would apply here. This sentence is going to be exactly the same. If my friend, I think the most relief my friend Mr. Earley can receive here would be to vacate those two counts. If that happens, this goes back to the district court, and this court's precedent is explicit about that, that under the sentencing package doctrine, that once fewer than all counts have been vacated on appeal, the district court is permitted to reconsider its sentencing package. And if it follows the guidelines here as it did before in how to construct the sentence, it's going to be exactly the same sentence. Well, now aren't you asking us to assume what the district court is going to do? No, Your Honor. What I'm asking is for... Does the district court have the chance to make that decision in the first instance? Not exactly, because we are on... This gets to your question about plein air. I don't think we're on plein air review here. This is an ineffective assistance claim before the court of appeals. This court exercises plein air review. The standard is performance and prejudice, and on both prongs, the defendant has the burden. So, no, I'm not casually saying let's... Why not? Let's have the district court try it first. I'm just trying to argue precedent here that the defendant has the burden before getting that second chance to show a reasonable probability that there will be a different outcome. And that just can't be done on this record. I have no problem going back to the district court. We've always welcomed that opportunity, but it's just not required under the precedent of the court. Then answer Palumbo, which, again, you guys rely on. The government's leaning on it. It says the government contends that even if the two mail fraud charges in the superseding indictment had been dismissed, Palumbo would have received the same sentence because the sentencing judge would nonetheless have taken the offense into account. That's relevant conduct. The government is probably correct. The dismissal of the charges would not have precluded their consideration of sentencing. And yet the court goes on and says, that's not good enough. These things have downstream effects, and that's not something that should just get the back of the hand. We're not going to let those stand. Sure. Well, we certainly rely on Palumbo for the statements that it makes that are relevant to the inquiry. That case comes out a different way because this court determines that there is a reasonable possibility, that the district court would impose a different sentence where it was proceeding with the wrong assumption of what the statutory maximum was. Different case. Here, the guidelines. I'm trying to guide you back because I'm not talking about the sentence he's going to get. I'm even giving it to you, Mr. Zosmer. Likelihood, high likelihood, sentence comes out the same. I'm trying to get you to focus on the collateral consequences point, which is what I understood the Ninth Circuit to be focused on in Palumbo. What is the government's answer to that other than don't worry about it? There are insufficient collateral consequences where a person is convicted of multiple felony convictions that still stand. That's a simple fact of the matter here. And even if you just talk about the DVDs, he talks about transporting counterfeit goods that the defendants were convicted of. Take away those two counts, they're still convicted of conspiracy to transport counterfeit goods over which the district court had venue. And count one is no longer being challenged here. So how can it be that they're convicted of a felony conspiracy to transport counterfeit goods and to traffic in misbranded improper drugs, a felony conviction, and there's some additional collateral consequence of having two more felony counts that only involve a handful of the DVDs that are involved in the overall conspiracy. We respectfully suggest that's not a collateral consequence. It's sufficient. Well, let me just the district court didn't didn't really analyze prejudice that much. I don't at least from what I can tell. Maybe maybe I'm missing something in the record and didn't specifically invoke the concurrent sentence doc. I mean, your case, I think you'd agree with me, would be much stronger if the district court said, yes, now I want to invoke the concurrent sentence doctrine and I want to lay out what would have happened had performance been improper with respect to counts 14 and 15. But without that finding by the district court first, it seems that it's a little bit of a harder read to invoke the concurrent sentence doctrine here for the first time. I mean, I think we typically will invoke, and you can correct me if I'm wrong, concurrent sentence doctrine kind of almost as an abuse of discretion. The district court invoke that. OK, that was an abuse of discretion. But here I don't think they did it. And so it comes to us in a slightly different posture where we're kind of asked, or at least you're asking us, to work on it the very first time. What do you say about that? Your Honor, the district court did not rule on this because the government, it's been a moving target on both sides, but the government did not make the argument, did not make the concession that there was no venue on 14 and 15. The district court concluded there was. We're not defending that on appeal. So we're on grounds now where we're asking for affirmance on another ground supported by the record. So Your Honor is absolutely correct. The court has not addressed prejudice. It hasn't addressed the concurrent sentence doctrine. I disagree a bit about the concurrent sentence doctrine. I don't think it's an abuse of discretion standard or exercise. I think it's a jurisprudential rule to avoid review that is not necessary. And the reason I believe that I can make all of these arguments, including relying on the rule that this court can affirm on any ground supported by the record, is that we are here on plenary review. This court exercises plenary review over ineffectiveness questions. So regardless of what the district court had concluded, this court would still have it upon itself to address prejudice and to exercise the concurrent sentence doctrine if that were appropriate. In lots of circumstances, we have plenary review, but we don't arrogate to ourselves the opportunity to do something in the first instance, which is typically the job of the district court. We don't decide sentences. We send it back and say, okay, you made an error. Now fix it. Why shouldn't we do that here? Why would we not say to the district court, these convictions can't stand now, and even the government doesn't try to defend them. Now you decide what the appropriate sentence is with those convictions not in the mix. Isn't that the way we usually operate? Probably I would say usually. Every case is different. I think what's different about this case, and certainly I'm not here stating a profound objection to that if that's what the court deems appropriate, but what's different about this case is this is a very clear record that shows us an inconsequential error. In fact, there might not even be an error. There certainly probably was a really good strategic reason. The defense counsel even cross-examined the agent at trial about what are we doing here in Philadelphia. They were well aware of this issue. What would have been the tactical reason? The tactical reason was to not be tried twice. There was ample venue for the 13 other counts in Philadelphia. Even at the time that my friend refers to after the government has rested, the government would still be sort of baited to take another shot. These two counts only involve a couple sets of seized goods. There was an abundance of other possible charges in South Carolina. There are a lot of strategic reasons. I thought your original step was the right one, Mr. Sosmer, which was let's talk about prejudice and let's not talk about deficient performance. Because if we start talking about deficient performance, don't we have to say there must be an evidentiary hearing? You cannot say as a matter of law this was sufficient performance. If you can't say it as a matter of law, doesn't the statute require an evidentiary hearing? I think the argument for an evidentiary hearing on the performance prong is much stronger than it is for the prejudice prong. That's, of course, why I started with the prejudice prong. I also, again, think that there's a really clear record here of an absence of a showing of poor performance, either, again, recognizing that the defendant has the burden here. And I think that's significant. What strategic reason could you possibly have, as Mr. Earley has pointed out, for not moving for a judgment acquittal? Maybe you want to wait. You want to see what happens. You let it roll through. But at the end, you've got the government locked in. Double prejudice is in play. They can't try you twice. You've got two unlawful felony convictions. What possible strategic reason could competent counsel have for not making that motion? Because, and again, this is not the central part of my argument, but I'm answering the court's question, because the government could then decide to charge other substantive counts if it wanted substantive convictions for the DVD trafficking in South Carolina. There would be double jeopardy on those two. They could still do that. There's nothing that the motion to acquittal does that, I mean, it's not like they're friends at that point. Okay, I won't object if you don't do this. The government always has the power to bring additional charges. I think it's much more likely that if the government has had its shot on the counts that it deemed appropriate, there's virtually no chance there's going to be any second prosecution. But in addition, the big point here, over and over again, is that these two counts, you know, one of the defense counsel, I think Mr. Brennan in his closing argument, he said the DVDs are completely a red herring. And I've known Mr. Brennan for decades, and I have to say to some extent he's right. They were not the tail that wagged the dog of this case. And certainly that was true at sentencing. The DVDs were not the main focus of the parties. It wasn't the main focus of the district judge. If you look at the closing arguments and look at the sentencing, as I know the court has, there's a lot of reason for defense counsel to say DVD counts are not our problem, and in fact set up Mr. Brennan's argument to the jury that you're being led down the wrong road here. Those are all reasons not to argue venue until the case is over, but they don't speak frankly to the failure to file motion for acquittal. But leaving that to the side and going back to prejudice, what are we to make of the Supreme Court's statement in Weaver v. Massachusetts that the burden on the defendant is to show either a reasonable probability of a different outcome or that the trial was fundamentally unfair? So you get to show one or the other. And Mr. Erdlis got up here and said, we've shown it. The outcome would clearly be different. That's a different outcome. Now, in light of Weaver, why isn't that enough? Because I think when we talk about reasonable outcome, we're talking about the overall outcome of the case. We're not granularly looking at individual counts. Doesn't that talk about outcome of the proceeding? It does. And this court and the Supreme Court have always used slightly different words many times on that standard of what the Strickland prejudice standard is, but generally it comes down to the outcome of the proceeding, how it's generally going to turn out. And that's my main argument here, which is that if you look at the broad outcome of the proceeding, which I think is what's appropriate, individual counts don't matter. And if I were wrong about that, there'd be no concurrent sentence. And proceeding includes the final sentencing? It does. And most importantly, I mean, that is the most important thing, I think, to any defendant, what's my sentence? And that sentence would not be different. Maybe the most important thing to him right then, but if we thought there were indeed collateral consequences, that doesn't matter whether the sentence is the same, right? I agree. And I'm here to respectfully argue that there are no additional collateral consequences of any note where you're convicted of a felony conspiracy to transport counterfeit goods, and then you have two more substantive convictions for transporting counterfeit goods. Okay. Thanks very much, Mr. Sharfstein. Thank you very much. Mr. Eardley, you have three minutes, sir. Thank you. Very brief. I just want to point out that just one error. There are no felony counts or convictions in this case with regard to the pesticides, to the flea drops. Are there other felony convictions in this case? There is one felony, well, there are the two at issue here, and there is the one for conspiracy. But counsel misrepresented it. There's a lot going on in this case. Misstated. Let me rephrase it. Misstated. There are no felonies with regard to anything other than DVDs. Given the felony conviction on the conspiracy count, what are the collateral consequences if the convictions on counts 14 and 15 stand? So if the convictions on counts 14 and 15 stand, one collateral consequence is that under the specific statute, which is 18 United States Code 2320, which talks of trafficking in counterfeit goods, that specifically doubles the penalty or at least doubles the maximum statutory penalty on subsequent convictions. And, you know, again, the Hastins, they're never going to sell. Even if they do it again. Right. They're never going to do flea drops again, I can assure you. And they're never going to do DVDs again. However, they are, this is their business. They sell on Amazon and eBay. They could find themselves here again. And, you know, while it's certainly not as nefarious as Judge Jordan likes to refer to, repeat flyers. Hold just a second. And this is a little unusual, but Mr. Zosmer, I want to just ask, I want this on the record. Is he right about that? As a matter of law, is he right that they are exposed because of those two convictions to enhance penalties if they were to be, to face this again? I don't know the answer offhand. If we could submit a letter on that, we will do that. Please do. And if we could also address, you know, how speculative collateral consequences need to be. Because I think that's also an issue that's being presented here. Yeah. Yeah. Well, when you say how speculative. Yeah. Tell you what. I'll look for, we will look for a five-page letter from each side, cross-submissions within a week, and cross-replies a week after that. Please. Go ahead, Mr. Erdman. I was just going to ask, specifically, the five-page letter on the collateral consequences? Yes, and on the specific collateral consequence you've just identified, which is if they face a charge of this again, they face double the penalties. That's right in the statute. Yes, Your Honor. And the speculative nature of it, you know, it turns on if they do it again. That's in all, that's in the cases, that's in the Ninth Circuit case, which the government cited first in its brief. It's a drug case, and they're like, look, we're not saying he's going to deal drugs again, but. Just to make sure that your answer is complete, are there any other collateral consequences that you can think of, or is that the one? Why, I'd have to think. Okay. Well, you can, because we'll get those cross-submissions from you. Thank you. And we thank both counsel for their argument, and we'll go ahead and recess court.